# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

IN RE:

SOPHIA D AMORGINOS,

_____Debtor._____/

Case No.: 8:18-bk-08709-RCT

Chapter 7

## MOTION FOR RELIEF FROM AUTOMATIC STAY

---

### NOTICE OF OPPORTUNITY TO OBJECT AND FOR HEARING

**Pursuant to Local Rule 2002-2, the Court will consider the relief requested in this paper without further notice or hearing unless a party in interest files a response within [21] days from the date set forth on the proof of service plus an additional three days for service if any party was served by U.S. Mail, or such other period as may be specified in Fed. R. Bankr. P. 9006(f).**

**If you object to the relief requested in this paper, you must file an objection or response electronically with the Clerk of the Court or by mail at U.S. Bankruptcy Court, Middle District of Florida, 801 North Florida Avenue, Suite 555, Tampa, FL 33602 and serve a copy on the movant's attorney, Seth J. Greenhill, Esq., Padgett Law Group, 6267 Old Water Oak Road, Suite 203, Tallahassee, FL 32312, and any other appropriate person within the time allowed. If you file and serve a response within the time permitted, the Court will either schedule and notify you of a hearing or consider the response and grant or deny the relief requested without a hearing.**

**If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.**

---

**COMES NOW,** Nationstar Mortgage LLC d/b/a Champion Mortgage Company, hereinafter referred to as "Movant", seeking modification of the automatic stay in this case in order to exercise any and all rights Movant may have in the collateral described below, or in the alternative, adequate protection, and for cause would show the Court as follows:

1.      On October 11, 2018, Sophia D Amorginos (hereinafter referred to as "Debtor"), filed for relief under Chapter 7 of the Bankruptcy Code.

2.      Jurisdiction of this cause is granted to the Bankruptcy Court pursuant to 28 U.S.C.

§1334, 11 U.S.C. §362 and all other applicable rules and statues affecting jurisdiction of the Bankruptcy Courts generally.

3.      Debtor, Sophia D Amorginos, executed an Adjustable Rate Note ("Note") and an Adjustable Rate Home Equity Conversion Mortgage ("Mortgage") (hereinafter referred to as "Agreement") in the principal amount of $323,332.50, together with interest thereon as set forth therein. Said Agreement is currently held by Movant and a copy of the Agreement is attached hereto as Exhibit "A".

4.      Funds were advanced in connection with the aforementioned agreement as purchase money for the following real property: 31 North Park Avenue, Tarpon Springs, FL 34689.

**LOT 12, BLOCK D, INNESS PARK, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT BOOK 13, PAGE 1, PUBLIC RECORDS OF PINELLAS COUNTY, FLORIDA.**

5.      The terms of the aforementioned Agreement entitle Movant to possession of the collateral upon Default. The Movant has declared the Debtor in Default.

6.      Movant now holds equitable title to the collateral as a result of the terms of the Agreement.

7.      Debtor has defaulted under the terms of the Agreement by failing to make the insurance payments as required under the Agreement. The account is currently due for the June 20, 2018 Hazard Force Place Insurance and the June 13, 2018 Flood Force Place Insurance. The current delinquency as of March 11, 2019 is $3,271.42. The payoff is $186,649.52 as of March 31, 2019.

8.      According to the Pinellas County Property Appraiser, the appraised value of the property is $130,994.00. See Exhibit "**B**" which is attached hereto and permissible as a

property valuation under Fed. R. Evid. 803(8).

9.      Based upon the Debtor's schedules, the property is claimed as non-exempt. The Trustee has not abandoned the property.

10.     Movant's security interest in the subject property is being significantly jeopardized by Debtor's failure to comply with the terms of the subject loan documents while Movant is prohibited from pursuing lawful remedies to protect such interest. Movant has no protection against the erosion of its collateral position and no other form of adequate protection is provided.

11.     If Movant is not permitted to enforce its security interest in the collateral or be provided with adequate protection, it will suffer irreparable injury, loss, and damage.

13.     Movant further requests this Court grant it relief from the Automatic Stay in the case pursuant to §362(d)(1) of the Bankruptcy Code, for cause, namely the lack of adequate protection to Movant for its interest in the above stated collateral. The value of the collateral is insufficient in and of itself to be provided to the Movant. Movant additionally seeks relief from the Automatic Stay pursuant to §362(d)(2) of the Bankruptcy Code, as the collateral is unnecessary to an effective reorganization of the Debtor's assets.

14.     Movant has incurred court costs in the amount of $181.00 and attorney's fees in the amount of $750.00 in this proceeding and will incur additional fees, costs and expenses in foreclosing the Mortgage and in preserving and protecting the property, all of which additional sums are secured by the lien of the Mortgage. Movant seeks an award of its reasonable attorneys' fees and costs, or alternatively, leave to seek recovery of its reasonable attorneys' fees and costs in any pending or subsequent foreclosure proceeding.

15.     Movant requests that should the Debtor convert this case to another chapter that relief awarded will survive any conversion made by the Debtor and will not be allowed to include the creditor in the Chapter 13 plan.

16.     A Proposed Order accompanies this Motion. See Exhibit "**C**" attached hereto.

WHEREFORE, Movant prays this Honorable Court enter an order modifying the automatic stay under 11 U.S.C. §362(d) to permit Movant to take any and all steps necessary to exercise any and all rights it may have in the collateral described herein, to gain possession of said collateral, to waive the 14-day stay imposed to Fed.R.Bankr.P. 4001(a)(3), to seek recovery of its reasonable attorneys' fees and costs incurred in this proceeding, and to any such further relief as this Honorable Court deems just and proper.

**DATED** this 12th day of March 2019.

Respectfully submitted,

/s/ Seth Greenhill
SETH GREENHILL, ESQ.
Florida Bar # 97938
PADGETT LAW GROUP
6267 Old Water Oak Road, Suite 203
Tallahassee, FL 32312
(850) 422-2520 (telephone)
(850) 422-2567 (facsimile)
SGreenhill@padgettlaw.net
*Attorney for Creditor*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished to the parties on the attached Service List by electronic notice and/or by First Class U.S. Mail on this 12th day of March 2019.

/S/ Seth Greenhill

_____

SETH GREENHILL, ESQ.
Florida Bar # 97938
PADGETT LAW GROUP
6267 Old Water Oak Road, Suite 203
Tallahassee, FL 32312
(850) 422-2520 (telephone)
(850) 422-2567 (facsimile)
SGreenhill@padgettlaw.net
*Attorney for Creditor*

## <u>SERVICE LIST (CASE NO. 8:18-bk-08709-RCT)</u>

Debtor
Sophia D Amorginos
31 N. Park Ave.
Tarpon Springs, FL 34689

**Attorney for Debtor**
Steve Bartlett
Law Office of Steve Bartlett, P.A.
2150 Seven Springs Blvd.
Trinity, FL 34655

Trustee
Carolyn R. Chaney
PO Box 530248
St. Petersburg, FL 33747

U.S. Trustee
United States Trustee - TPA7/13
Timberlake Annex, Suite 1200
501 E Polk Street
Tampa, FL 33602

# ADJUSTABLE RATE NOTE
# (HOME EQUITY CONVERSION)

JULY 26, 2006

31 NORTH PARK AVENUE
TARPON SPRINGS, FL 34689

[Property Address]

## 1. DEFINITIONS
"Borrower" means each person signing at the end of this Note. "Lender" means
WELLS FARGO BANK, N.A.

and its successors and assigns. "Secretary" means the Secretary of Housing and Urban Development or his or her authorized representatives.

## 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for amounts to be advanced by Lender to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated                07/26/06 ("Loan Agreement"), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest. All amounts advanced by Lender, plus interest, if not paid earlier, are due and payable on MARCH 31ST                ,2088       . Interest will be charged on unpaid principal at the rate of SIX AND 720/1000
percent (                6.720 %) per year until the full amount of principal has been paid. The interest rate may change in accordance with Paragraph 5 of this Note. Accrued interest shall be added to the principal balance as a Loan Advance at the end of each month.

## 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT
**(A) Time**
Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a notice by Lender requiring immediate payment in full, as provided in Paragraph 7 of this Note.
**(B) Place**
Payment shall be made at WELLS FARGO BANK, N.A.
3480 STATEVIEW BLVD.   MAC X7802-038
FORT MILL, SC 29715-7203                                           , or any such other place as Lender may designate in writing by notice to Borrower.
**(C) Limitation of Liability**
Borrower shall have no personal liability for payment of the debt. Lender shall enforce the debt only through sale of the Property covered by the Security Instrument ("Property"). If this Note is assigned to the Secretary, the Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

## 5. INTEREST RATE CHANGES
**(A) Change Date**
The interest rate may change on the first day of OCTOBER   2006                , and on  ☐ that day of each succeeding year   ☒ the first day of each succeeding month. "Change Date" means each date on which the interest rate could change.
**(B) The Index**
Beginning with the first Change Date, the interest rate will be based on an Index. "Index" means the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. "Current Index" means the most recent Index figure available 30 days before the Change Date. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.
**(C) Calculation of Interest Rate Changes**
Before each Change Date, Lender will calculate a new interest rate by adding a margin of ONE AND ONE-HALF                percentage points (                1.500 %) to the Current Index. Subject to the limits stated in Paragraph 5(D) of this Note, this amount will be the new interest rate until the next Change Date.
**(D) Limits on Interest Rate Changes**
☐ The interest rate will never increase or decrease by more than two percentage points (2.0%) on any single Change Date. The interest rate will never be more than five percentage points (5.0%) higher or lower than the initial interest rate stated in Paragraph 2 of this Note.
☒ The interest rate will never increase above SIXTEEN AND 720/1000
percent (          16.720 %).
**(E) Notice of Changes**
Lender will give notice to Borrower of any change in the interest rate. The notice must be given at least 25 days before the new interest rate takes effect, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the Current Index and the date it was published, (vi) the method of calculating the adjusted interest rate, and (vii) any other information which may be required by law from time to time.

Page 1 of 3

**(F) Effective Date of Changes**
A new interest rate calculated in accordance with paragraphs 5(C) and 5(D) of this Note will become effective on the Change Date, unless the Change Date occurs less than 25 days after Lender has given the required notice. If the interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note decreased, but Lender failed to give timely notice of the decrease and applied a higher rate than the rate which should have been stated in a timely notice, then Lender shall recalculate the principal balance owed under this Note so it does not reflect any excessive interest.

## 6. BORROWER'S RIGHT TO PREPAY

A Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. Any amount of debt prepaid will first be applied to reduce the principal balance of the Second Note described in Paragraph 11 of this Note and then to reduce the principal balance of this Note.
All prepayments of the principal balance shall be applied by Lender as follows:
First, to that portion of the principal balance representing aggregate payments for mortgage insurance premiums;
Second, to that portion of the principal balance representing aggregate payments for servicing fees; Third, to that portion of the principal balance representing accrued interest due under the Note; and Fourth, to the remaining portion of the principal balance. A Borrower may specify whether a prepayment is to be credited to that portion of the principal balance representing monthly payments or the line of credit. If Borrower does not designate which portion of the principal balance is to be prepaid, Lender shall apply any partial prepayments to an existing line of credit or create a new line of credit.

## 7. IMMEDIATE PAYMENT IN FULL

**(A) Death or Sale**
Lender may require immediate payment in full of all outstanding principal and accrued interest if:
(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower, or
(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).
**(B) Other Grounds**
Lender may require immediate payment in full of all outstanding principal and accrued interest, upon approval by an authorized representative of the Secretary, if:
(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower;
(ii) For a period of longer than 12 consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or
(iii) An obligation of the Borrower under the Security Instrument is not performed.
**(C) Payment of Costs and Expenses**
If Lender has required immediate payment in full as described above, the debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorneys' fees, associated with enforcement of this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.
**(D) Trusts**
Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph.

## 8. WAIVERS

Borrower waives the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 9. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the Property Address above or at a different address if Borrower has given Lender a notice of Borrower's different address.
Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 10. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note only through sale of the Property.

## 11. RELATIONSHIP TO SECOND NOTE

**(A) Second Note**
Because Borrower will be required to repay amounts which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant a Second Note to the Secretary.
**(B) Relationship of Secretary Payments to this Note**
Payments made by the Secretary shall not be included in the debt due under this Note unless:
(i) This Note is assigned to the Secretary; or
(ii) The Secretary accepts reimbursements by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, shall be included in the debt.

**(C) Effect on Borrower**
Where there is no assignment or reimbursement as described in (B)(i) or (ii), and the Secretary makes payments to Borrower, then Borrower shall not:
(i) Be required to pay amounts owed under this Note until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note held by the Secretary, notwithstanding anything to the contrary in Paragraph 7 of this Note; or
(ii) Be obligated to pay interest or shared appreciation under this Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance of this Note, notwithstanding anything to the contrary in Paragraphs 2 or 5 of this Note or any Allonge to this Note.

**12. SHARED APPRECIATION**
If Borrower has executed a Shared Appreciation Allonge, the covenants of the Allonge shall be incorporated into and supplement the covenants of this Note as if the Allonge were a part of this Note.

**13. GOVERNING LAW**
All interest, fees and other amounts charged or accruing in connection with this Note which are considered "interest" within the meaning of Section 85 of the National Bank Act (12 USC ½ 85; 12 CFR 7.4001(a)) shall be governed by and interpreted under South Dakota law. In all other respects, this Note and all related documents, as well as the rights, remedies, and duties of the Bank and the borrower(s), shall be governed and interpreted by federal law with respect to national banks and, to the extent not preempted by federal law, the consumer protection laws of the state in which the real estate is located, except that Texas Finance Code Chapter 346 (which regulates certain revolving credit accounts) does not apply to this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_Sophia D. Amorginos_ _____ (Seal)
SOPHIA D. AMORGINOS                                         -Borrower

_____ (Seal)
                                                           -Borrower

_____ (Seal)
                                                           -Borrower

_____ (Seal)
                                                           -Borrower



WITHOUT RECOURSE
PAY TO THE ORDER OF
WELLS FARGO BANK, N.A.
BY _Joan M Mills_
Joan M. Mills, Vice President

RECORDING REQUESTED BY

**WELLS FARGO BANK , N.A.**
**P.O. BOX 10304**
**DES MOINES, IA 50306-0304**
~~AND WHEN RECORDED MAIL TO~~
*Prepared by:*

Name **WELLS FARGO BANK N.A.**
Street
Address **1000 BLUE GENTIAN ROAD**

City,Stat
e **EAGAN, MN 55121**
Zip

**KEN BURKE, CLERK OF COURT**
**PINELLAS COUNTY FLORIDA**
**INST# 2006325501 08/31/2006 at 08:59 AM**
**OFF REC BK: 15338  PG: 836-845**
**DocType:MTG RECORDING: $86.50**

**M DOC STAMP: $1131.90 INT TAX: $646.67**

PLEASE RETURN TO REC. DEPT.
Lender's First Choice
3550 Regal Avenue
Simi Valley, CA 93003

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# ADJUSTABLE RATE
## HOME EQUITY CONVERSION DEED OF TRUST

_____ [Space Above This Line For Recording Data] _____

**State of Florida**

# ADJUSTABLE RATE
# HOME EQUITY CONVERSION MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on        07/26/06 . The
grantor is  SOPHIA D. AMORGINOS, AN UNMARRIED WOMAN



whose address is   31 NORTH PARK AVENUE, TARPON SPRINGS, FL  34689

                                          ("Borrower"). This Security

Instrument is given to WELLS FARGO BANK, N.A.

                                                  , which is

organized and existing under the laws THE UNITED STATES
and whose address is
P.O. BOX 17339

BALTIMORE, MD  212971339                              ("Lender").  Borrower
has agreed to repay to Lender amounts which Lender is obligated to advance, including future
advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as
this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's
Note dated the same date as this Security Instrument ("Note"). This Security Instrument secures to
Lender: (a) the repayment of the debt evidenced by the Note, with interest at a rate subject
to adjustment, and all renewals, extensions and modifications of the Note, up to a maximum
amount of THREE HUNDRED TWENTY THREE THOUSAND THREE HUNDRED THIRTY TWO AND
50/100

(U.S. $             323332.50  ); (b) the payment of all other sums, with interest, advanced
under Paragraph 5 to protect the security of this Security Instrument or otherwise due under the
terms of this Security Instrument; and (c) the performance of Borrower's covenants and
agreements under this Security Instrument and the Note. The full debt, including amounts described
in  (a),  (b),  and  (c)  above,  if  not  paid  earlier,  is  due  and  payable  on
MARCH 31ST , 2088            . For this purpose, Borrower does hereby mortgage, grant and
convey to Lender the following described property located in PINELLAS
County, Florida:

Page 1

LOT 12, BLOCK D, INNESS PARK, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT BOOK 13, PAGE 1, PUBLIC RECORDS OF PINELLAS COUNTY, FLORIDA.

which has the address of        31 NORTH PARK AVENUE
                                [Street]

TARPON SPRINGS, FL    34689
[City, State, Zip]
("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.

**2. Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

**3. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and to Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be



Page 2

lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**4. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument, and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**5. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

**6. Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

**7. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.



**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

(b) **Due and Payable with Secretary Approval.** Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

(ii) For a period of longer than twelve (12) consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under this Security Instrument is not performed.

(c) **Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in this Paragraph (a) (ii) or (b) occur.

(d) **Notice to Secretary and Borrower.** Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph 9 (a) (ii) or (b). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

(i) Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii) Pay the balance in full; or

(iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) Provide the Lender with a deed in lieu of foreclosure.

(e) **Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

(f) **Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within SIXTY DAYS     from the date hereof, if permitted by applicable law Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to SIXTY DAYS     from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

**11. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure

Page 4

proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

**12. Lien Status.**

**(a) Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

**(b) Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

**(c) Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**13. Relationship to Second Security Instrument.**

**(a)** Second Security Instrument. In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and a Second Security Instrument on the Property.

**(b)** Relationship of First and Second Security Instruments. Payments made by the Secretary shall n̲ḏ̲ ̲ ̲d in the debt under the Note unless:

(i) ̲ ̲̲ Instrument is assigned to the Secretary; or

(ii) ̲ ̲̲ry accepts reimbursement by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

**(c)** Effect on Borrower. Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 19 to Lender or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

(ii) Be obligated to pay interest or shared appreciation under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note.

Page 5

**(d) No Duty of the Secretary.** The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

**14. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**15. Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender. Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

**16. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

**17. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**18. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**19. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

**20. Foreclosure Procedure. If Lender requires immediate payment in full under Paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**



Page 6

21. Lien Priority. The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made. regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priorty of any liens for unpaid State or local governmental unit special assessments or taxes.

22. Adjustable Rate Feature. Under the Note, the initial stated interest rate of 6.720 % which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change. as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board in Statistical Release H.15 (519) ("Index") plus a margin. If the Index is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on the first day of OCTOBER 2006 . and on ☐ that day of each succeeding year ☒ the first day of each succeeding month ("Change Date") until the loan is repaid in full.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the "Calculated Interest Rate" for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate").

☐ (Annually Adjusting Variable Rate Feature) The Calculated Interest Rate cannot be more than 2.0% higher or lower than the Existing Interest Rate. nor can it be more than 5.0% higher or lower than the Initial Interest Rate.

☒ (Monthly Adjusting Variable Rate Feature) The Calculated Interest Rate will never increase above SIXTEEN AND 720/1000 percent ( 16.720 %).

The Calculated Interest Rate will be adjusted if necessary to comply with these rate limitation(s) and will be in effect until the next Change Date. At any Change Date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

24. Compound Interest. At the end of each month, accrued interest shall be added to and made a part of the principal balance as a Loan Advance and shall likewise thereafter bear interest.

25. Attorneys' Fees. As used in this Security Instrument and the Note, "attorneys' fees" shall include any attorneys' fees awarded by an appellate court.



Page 7

**27. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☐ Condominium Rider    ☐ Shared Appreciation Rider    ☐ Planned Unit Development Rider
☐ Other (Specify)

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_Linda S. Dearborn_
Linda S. Dearborn

_Sophia D. Amorginos_ _____ (Seal)
SOPHIA D. AMORGINOS                                     -Borrower          -Borrower

_____ (Seal)    _____ (Seal)
                          -Borrower                              -Borrower

[Space Below This Line For Acknowledgment]

**STATE OF** _Florida_        , _Pinellas_    **COUNTY SS:**

The foregoing instrument was acknowledged before me this _26th_ day of _July, 2006,_

by _Sophia D. Amorginos_

who is personally known to me or; who has produced _FL Drivers License_
as identification and who did (did not) take an oath.

LINDA S DEARBORN
Notary Public - State of Florida
My Commission Expires Mar 11, 2007
Commission # DD 192538

_Linda S. Dearborn_
Notary Public

Name: _Linda S. Dearborn_

Page 8

EXHIBIT "A"


THE FOLLOWING DESCRIBED LAND, SITUATE, LYING AND BEING IN
PINELLAS COUNTY, FLORIDA, TO-WIT:

LOT 12, BLOCK "D", INNESS PARK, ACCORDING TO THE MAP OR PLAT
THEREOF AS RECORDED IN PLAT BOOK 13, PAGE 1, PUBLIC RECORDS OF
PINELLAS COUNTY, FLORIDA.

FOR INFORMATIONAL PURPOSES ONLY: THE APN IS SHOWN BY THE COUNTY
ASSESSOR AS 11-27-15-43056-004-0120; SOURCE OF TITLE IS BOOK
7855, PAGE 2282 (RECORDED 03/26/92)

RECORDING REQUESTED BY:
WELLS FARGO BANK, N.A.
1000 BLUE GENTIAN RD
SUITE 200
EAGAN MN 55121
WHEN RECORDED MAIL TO:
WELLS FARGO BANK, N.A.
MAC: N9289-016
PO BOX 1629
EAGAN, MN 55121-4400
ATTN: ASSIGNMENT TEAM

## ASSIGNMENT OF MORTGAGE

For good and valuable consideration, the sufficiency of which is hereby acknowledged, WELLS FARGO BANK, N.A. , 1 HOME CAMPUS , DES MOINES, IA 50328 , by these presents does convey, assign, transfer and set over to: NATIONSTAR MORTGAGE LLC D/B/A CHAMPION MORTGAGE COMPANY , 8950 CYPRESS WATERS BLVD , COPPELL, TX 75019 , the described Mortgage, with all interest, all liens, and any rights due or to become due thereon. Said Mortgage for $323332.50 is recorded in the State of FLORIDA , County of Pinellas Official Records, dated 07/26/2006 and recorded on 08/31/2006 , as Instrument No. 2006325501 in Book No. 15338 , at Page No. 836 .

Original Mortgagor: SOPHIA D. AMORGINOS, AN UNMARRIED WOMAN
Original Mortgagee: WELLS FARGO BANK, N.A.
Property Address: 31 NORTH PARK AVENUE TARPON SPRINGS, FL 34689

Date: 10/10/2017 .
WELLS FARGO BANK, N.A.

WISSALL KIM, Vice President Loan Documentation
STATE OF MN
COUNTY OF Dakota } s.s.
On 10/10/2017 , before me ALBERTO O. CASTILLO , Notary Public, personally appeared WISSALL KIM , Vice President Loan Documentation of WELLS FARGO BANK, N.A. personally known to me (or proved to me on the basis of satisfactory evidence), to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument, the person or entity upon behalf of which the person acted, executed the instrument.
Witness my hand and official seal.

ALBERTO O. CASTILLO, Notary Public
Commission #: 31048004
My Commission Expires: 01/31/2022

ALBERTO O CASTILLO
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 1/31/22

0be3f621

eRecorded



MIKE TWITTY, MAI
Meet Mike

Property Appraiser HOME
Search Our Database
Appraisal Info
Forms / Change of Address
Exemption / Save-Our-Homes / Portability
Tax Estimator (New)
Tangible Personal Property
Downloads / Reports / Maps
Truth In Millage
Tax Roll / Budget / Legal
Glossary / FAQ's
Links
Important ADA Information
About Us
Contact Us

Tax Estimator          **Updated** October 24, 2018          Email   Print   Radius Search          FEMA/WLM

| Ownership/Mailing Address Change Mailing Address | Site Address |
|---|---|
| AMORGINOS, SOPHIA D<br>31 N PARK AVE<br>TARPON SPRINGS FL 34689-2507 | 31 PARK AVE<br>TARPON SPRINGS |

Property Use: 0110 (Single Family Home)          Total Living: SF: 1,410   Total Gross SF: 1,705   Total Living Units:1

[click here to hide] **Legal Description**
INNESS PARK BLK D, LOT 12

Mortgage Letter     File for Homestead Exemption

| Exemption | 2018 | 2019 | 2019 Parcel Use |
|---|---|---|---|
| Homestead: | Yes | Yes | *Assuming no ownership changes before Jan. 1 |
| Government: | No | No | Homestead Use Percentage: 100.00% |
| Institutional: | No | No | Non-Homestead Use Percentage:  0.00% |
| Historic: | No | No | Classified Agricultural: No |

**Parcel Information**   Latest Notice of Proposed Property Taxes (TRIM Notice)

| Most Recent Recording | Sales Comparison | Census Tract | Evacuation Zone<br>(NOT the same as a FEMA Flood Zone) | Plat Book/Page |
|---|---|---|---|---|
| 07855/2282 | $148,200 Sales Query | 121030275012 | A | 13/1 |

**2018 Interim Value Information**

| | Just/Market Value | Assessed Value / SOH Cap | County Taxable Value | School Taxable Value | Municipal Taxable Value |
|---|---|---|---|---|---|
| 2018 | $130,994 | $91,311 | $41,311 | $66,311 | $16,311 |

[click here to hide] Value History as Certified (yellow indicates correction on file)

| Year | Homestead Exemption | Just/Market Value | Assessed Value | County Taxable Value | School Taxable Value | Municipal Taxable Value |
|---|---|---|---|---|---|---|
| 2017 | Yes | $124,989 | $89,433 | $39,433 | $64,433 | $14,433 |
| 2016 | Yes | $120,715 | $87,594 | $37,594 | $62,594 | $37,594 |
| 2015 | Yes | $108,895 | $86,985 | $36,985 | $61,985 | $36,985 |
| 2014 | Yes | $112,806 | $86,295 | $36,295 | $61,295 | $36,295 |
| 2013 | Yes | $95,706 | $85,020 | $35,020 | $60,020 | $35,020 |
| 2012 | Yes | $83,599 | $83,599 | $33,599 | $58,599 | $33,599 |
| 2011 | Yes | $98,877 | $83,398 | $33,398 | $58,398 | $33,398 |
| 2010 | Yes | $94,921 | $82,166 | $32,166 | $57,166 | $7,166 |
| 2009 | Yes | $99,539 | $80,006 | $30,006 | $55,006 | $30,006 |
| 2008 | Yes | $146,500 | $79,926 | $29,926 | $54,926 | $29,926 |
| 2007 | Yes | $141,000 | $77,598 | $52,598 | N/A | $52,598 |
| 2006 | Yes | $134,700 | $75,705 | $50,705 | N/A | $50,705 |
| 2005 | Yes | $108,300 | $73,500 | $48,500 | N/A | $48,500 |
| 2004 | Yes | $100,400 | $71,400 | $46,400 | N/A | $46,400 |
| 2003 | Yes | $96,700 | $70,100 | $45,100 | N/A | $45,100 |
| 2002 | Yes | $80,200 | $68,500 | $43,500 | N/A | $43,500 |
| 2001 | Yes | $71,200 | $67,500 | $42,500 | N/A | $42,500 |
| 2000 | Yes | $69,200 | $65,600 | $40,600 | N/A | $40,600 |
| 1999 | Yes | $64,400 | $63,900 | $38,900 | N/A | $38,900 |
| 1998 | Yes | $63,200 | $62,900 | $37,900 | N/A | $37,900 |
| 1997 | Yes | $61,900 | $61,900 | $36,900 | N/A | $36,900 |
| 1996 | Yes | $60,700 | $60,700 | $35,700 | N/A | $35,700 |

| 2017 Tax Information | | Ranked Sales (What are Ranked Sales?)   See all transactions | | | |
|---|---|---|---|---|---|
| 2017 Tax Bill | Tax District: TS | Sale Date | Book/Page | Price | Q/U   V/I |
| 2017 Final Millage Rate | 20.6800 | 26 Mar 1992 | 07855 / 2282 | $74,200 | U   I |

Do not rely on current taxes as an estimate following a change in ownership. A significant change in taxable value may occur after a transfer due to a loss of exemptions, reset of the Save Our Homes or 10% Cap, and/or market conditions. Please use our new Tax Estimator to estimate taxes under new ownership.

Amendment 1 - Will you Benefit?
Check Estimated 3rd Homestead Exemption Benefit

**2018 Land Information**

Seawall: No          Frontage: None          View:

| Land Use | Land Size | Unit Value | Units | Total Adjustments | Adjusted Value | Method |
|---|---|---|---|---|---|---|
| Single Family (01) | 56x126 | 950.00 | 56.0000 | 0.9900 | $52,668 | FF |

[click here to hide] **2019 Building 1 Structural Elements** Back to Top
Site Address: 31 PARK AVE

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

IN RE:

SOPHIA D AMORGINOS,

_____Debtor._____/

Case No.: 8:18-bk-08709-RCT

Chapter 7

## ORDER GRANTING MOTION FOR
## RELIEF FROM AUTOMATIC STAY [D.E.    ]

This case is before the Court upon the Motion for Relief from Automatic Stay [D.E.    ] filed by Creditor, Nationstar Mortgage LLC d/b/a Champion Mortgage Company, hereinafter referred to as "Movant". No party filed an objection within the proscribed time period and the Court therefore considers the matter unopposed. Accordingly, it is

ORDERED:

1.      The Motion for Relief from the Automatic Stay is GRANTED.

2.      The automatic stay imposed by 11 U.S.C. §362 is lifted as to Movant, and it may proceed with the enforcement of its security interest upon the following property

**REAL PROPERTY LOCATED AT 31 NORTH PARK AVENUE, TARPON SPRINGS, FL 34689 AND MORE ACCURATELY DESCRIBED BY ITS LEGAL DESCRIPTION WHICH IS:**

LOT 12, BLOCK D, INNESS PARK, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT BOOK 13, PAGE 1, PUBLIC RECORDS OF PINELLAS COUNTY, FLORIDA.

3.      This order is entered for the sole purpose of allowing Movant to obtain an **_in rem judgment_** against the property and Movant shall not seek an in personam judgment against the Debtors.

4.      The fourteen (14) day stay period as provided by Rule 4001(a)(3) shall not be waived or reduced.

**Attorney Seth J. Greenhill is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of entry of the order.**

Order prepared by:
Seth J. Greenhill, Esq.
Padgett Law Group
sgreenhill@padgettlaw.net